FILED

2022 Jul-08  PM 03:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOSEPH HOLT,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:21-cv-00885-AKK** |
| | ) | |
| **AMERICAN MODERN HOME** | ) | **OPPOSED MOTION** |
| **INSURANCE COMPANY,** | ) | |
| **Defendant.** | ) | |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

F. Lane Finch, Jr.
Brandon J. Clapp
SWIFT, CURRIE, McGHEE & HIERS, LLP
2 North 20th Street, Suite 1405
Birmingham, Alabama 35203
T: (205) 314-2401
F: (205) 244-1373
lane.finch@swiftcurrie.com
brandon.clapp@swiftcurrie.com
*Attorneys for American Modern Property and*
*Casualty Insurance Company*

# **TABLE OF CONTENTS**

I.      Introduction.............................................................................................1

II.     Narrative Statement of Undisputed Facts.......................................................2

        A.      Holt's Application For Insurance......................................................2

        B.      The American Modern Policy ...........................................................3

        C.      The Fire ......................................................................................4

        D.      American Modern Discovers Holt's Application
                Misrepresentations.......................................................................5

        E.      Discovery Reveals Additional Discrepancies ....................................6

IV.     Argument ..............................................................................................9

        A.      Standard Of Review ......................................................................9

        B.      American Modern Properly Rescinded The Policy And Denied
                Coverage Because Of Holt's Material Misrepresentations In The
                Application . .............................................................................10

        C.      Holt's Post-Loss Misrepresentations Also Preclude Coverage .........17

        D.      Arson Is A Defense To Coverage ...................................................18

        E.      No Evidence of Bad Faith ............................................................20

V.      Conclusion ...........................................................................................22

Defendant American Modern Property and Casualty Insurance Company ("American Modern") submits the following Brief in Support of its Motion for Summary Judgment:

## I. INTRODUCTION

American Modern rescinded the subject insurance policy issued to Plaintiff Joseph Holt after it discovered material misrepresentations in his insurance policy application following an incendiary house fire occurring only 18 days after the subject insurance policy was issued to Holt. Due to Holt's misrepresentations, American Modern also denied coverage for the insurance claim arising from the fire.

Undeterred, Holt brought this lawsuit seeking damages for breach of contract and bad faith arising from the fire. However, American Modern is entitled to judgment as a matter of law because it is undisputed Holt misrepresented material facts when he submitted his insurance application, and it is also undisputed he misrepresented critical facts during the claim investigation. In particular, Holt misrepresented the purchase price, date of purchase, and time period the subject property was uninsured in his application. Further, Holt misrepresented critical information concerning the subject property and the fire during the course of American Modern's investigation of the claim.

1

Additionally, American Modern is entitled to summary judgment based on an arson defense because the fire was of an incendiary nature, Holt had motive, and there are unexplained circumstances surrounding the fire.

Finally, American Modern is entitled to summary judgment as to Holt's bad faith claim because there is no evidence to support it, and American Modern had, at a minimum, a legitimate or arguable basis for its coverage decisions.

## II.  NARRATIVE STATEMENT OF UNDISPUTED FACTS

### A.  Holt's Application For Insurance

1.  In early November 2020, Holt contacted The Marcus Agency for insurance on a rental property located at 1228 4th Place North, Birmingham, Alabama (the "subject property"). Exhibit A – Holt Dep. at pp. 55-57 and Exhibit B – Policy Application.

2.  Specifically, Holt dealt with Taylor Dye at The Marcus Agency concerning the subject property. Ex. A. at p. 160:18-25.

3.  Ultimately, Holt applied for an American Modern Dwelling Basic Fire Insurance Policy. Ex. at pp. 60-61 and Ex. B.

4.  The insurance application submitted by Holt to American Modern is dated November 13, 2020, and is signed by both Holt and Dye. Ex. A at p. 66:6-9 and Ex. B.

2

5.      Dye prepared the application and sent the application to Holt for his review and signature. Ex. A at pp. 68-69.

6.      Holt concedes he signed the application. Ex. A at p. 66:6-9.

7.      The insurance application includes the following relevant statements:

- Purchase Date is stated as November 9, 2020;

- Purchase Price is stated as $89,000;

- Estimated Valuation is stated as $100,000;

- Roof Replaced in 2020.

Ex. B.

8.      Additionally, the policy application asks "For the length of time the applicant has owned the dwelling, how many days has it gone uninsured?" Holt's response is "0." Ex. B.

**B.      The American Modern Policy**

9.      In reliance on the representations contained in Holt's insurance application, American Modern issued a Dwelling Basic Insurance Policy to Plaintiff Joseph Holt insuring the subject property with an effective date of November 9, 2020 (the "Policy"). *See* Exhibit C – American Modern Policy.

10.     The Policy provided dwelling coverage of $100,000, other structures coverage of $10,000, personal property coverage of $3,800, and additional living expense/fair rental value of $1,500. Ex. C at p 2.

3

11.   The Policy includes the following condition to coverage:

### C. Concealment or Fraud

We provide coverage to no person insured under this Policy if, whether before or after a loss, one or more persons insured under this Policy have:

1.   Intentionally concealed or misrepresented any material fact or circumstance;

2.   Engaged in fraudulent conduct; or

3.   Made false statements;

relating to this insurance

Ex. C at p. 11.

### C.    The Fire

12.   On November 26, 2020, the subject property was damaged by a fire, which Holt reported to American Modern. *See* Doc. 1-2 at p. 5.

13.   Holt represented to American Modern the house was occupied by a tenant, Ta'Darrius Pickett, at the time of the fire. Ex. A at pp. 81:13-83:7.

14.   Holt also represented he was out-of-town at the time of the fire. Ex. A. at p. 84:6-9.

15.   American Modern's claims adjuster, Cheri Teer, inspected the home on November 30. Based on her inspection, she determined the home was a total loss, but she referred the claim to American Modern's Special Investigation Unit because the fire occurred within 30 days of the Policy's inception. Exhibit D – Claim Report.

4

**D.      American Modern Discovers Holt's Application Misrepresentations**

16.     During American Modern's investigation of the claim, Holt submitted to an examination under oath ("EUO") on December 30, 2020, during which his testimony established several misrepresentations on the insurance application.. Exhibit E – Holt EUO Transcript.

17.     Specifically, Holt confirmed he bought the property in July 2017, not November 2020. Ex. E. at p. 4:19-23; *see also* Exhibit F – Deed.

18.     Holt also confirmed he purchased the subject property for $8,000, not $89,000. Ex. E at p. 29:21-23 and Ex. F.

19.     Finally, Holt confirmed he did not have insurance on the subject property when he applied for coverage with American Modern. Ex. E. at pp. 36:13-37:21. Additionally, Holt has not produced any evidence the subject property was ever insured prior to the American Modern Policy. *See* Ex. A. at p. 148.

20.     American Modern's underwriting department utilizes guidelines to determine whether or not it will accept a new business application. *See* Exhibit G – Affidavit of C. Elam at ¶ 2.

21.     As a general rule, American Modern does not accept a new business application for a Dwelling Basic Fire Insurance Policy if the property was uninsured for longer than 90 days prior to the application date. *Id*. at ¶ 3.

5

22. Further, American Modern would not have issued the subject policy to Holt for the same coverage limits and same premium if it knew the actual purchase price of the subject property. *Id.* at ¶ 11.

23. As applied here, American Modern would not have issued the Policy to Holt if he accurately disclosed the length of time the subject property was uninsured when he submitted the application. *Id.* at ¶ 9.

24. As a result, American Modern denied Holt's insurance claim and rescinded the Policy based on his material misrepresentations on the application. *See* Exhibit H – Denial Letter to Holt and Exhibit I – May 5, 2021 Letter to Holt.

**E.   Discovery Reveals Additional Discrepancies**

25. Discovery in this case revealed new evidence establishing the house fire was deliberately set. Specifically, the Birmingham Fire Department classified it as "incendiary." *See* Exhibit J – Birmingham Fire Report at pp. 1-2.

26. The following is an excerpt of the narrative of the investigation contained in the report noting the findings for vacancy and that there were multiple origin points of the fire:

> On November 26, 2020 at approximately 19:08, Truck 1 with other suppression units responded to a House fire at 1224 4th Pl N and reported a working fire. The property is best described as an unoccupied one-story wood frame single-family dwelling without utilities. [ . . .] The origin was determined to be located on the B side of the structure. The Investigation revealed multiple points of origin. The fire has been classified as incendiary.

6

Ex. J at p. 8.

27.   Thus, the Birmingham Fire Department concluded the subject property was vacant without active utilities. *Id.*

28.   That is also confirmed by the utilities records received in response to subpoenas issued to Alabama Power and Birmingham Water Works; neither utility company had an active account for the subject property in November 2020. *See* Exhibit K – Alabama Power Utility Records and Exhibit L – Birmingham Water Works Utility Records.

29.   During both the claim investigation and discovery in this case, Holt represented the subject property was rented to Ta'Darrius Pickett at the time of the fire. Compare Ex. A at p. 48:1-49:17 and Ex. E at p. 15:3-13 with utilities records (Ex. K-L) and Birmingham Fire Department's report (Ex. J).

30.   During the claim investigation, Holt also reported to American Modern that he was out of town on the night of the fire. However, his deposition testimony on that topic was vague, equivocal, and evasive:

> Q. Where were you on the day of the fire?
>
> A. I was out of town, I believe, celebrating Thanksgiving with family.
>
> Q. Where out of town?
>
> A. I think -- I don't recall.· I think it was Atlanta -- Atlanta or either Nashville.· One of them.
>
> Q. Who were you with?

7

A. My girlfriend.

. . . .

Q. Who else were you with?

A. The kids.· Her children.

Q. Where were y'all staying?

A. At her house, I believe.· I don't remember where it was actually at.· I think it was at her house.

Q. So would that be in Atlanta or Nashville?

A. Nashville.

Q. Anybody else staying there?

A. No.

. . . .

Q. Where was her house in Nashville?

A. I don't remember.

. . . .

Q. What part of Nashville?

A. I don't think -- she didn't live in Nashville.· We went to Nashville for Thanksgiving.· She lived in Louisiana.· Sorry, I'm crossed up.· She lived in -- what was that  -- Lafayette -- Lafayette, Louisiana.

. . . .

Q. But you were in Nashville visiting for Thanksgiving?

A. Thanksgiving, yes.· We met up in Nashville.

. . . .

Q. And where were y'all staying?

A. I think it was -- it was something like a Grand Old Opera or something around there.· I'm not sure.· I

8

> can't remember that. I just know we were there for Thanksgiving.
>
> . . . .
>
> Q. Where were you when you got a call about the fire?
>
> A. Walking around.
>
> Q. What time was that?
>
> A. It was late at night.· I think it was anywhere from nine to twelve midnight.· In between there.
>
> Q. Where were you walking around?· Do you remember?
>
> A. In Nashville.
>
> Q. What part of Nashville?
>
> A. I don't know

Ex. A at pp. 84:6-88:1.

31.    Finally, Holt maintains he spent more than $80,000 renovating the subject property prior to the fire, but he does not have any evidence to support that contention. *See* Ex. A at p. 44:5-10 and 132:13-16.

## II.  ARGUMENT

### A.    Standard Of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has met its burden, the non-moving party must go beyond the pleadings and show that there is a genuine issue of fact

9

for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-movant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3). Further, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citations omitted).

**B.    American Modern Properly Rescinded The Policy And Denied Coverage Because Of Holt's Material Misrepresentations In The Application**

Ala. Code § 27-14-7 prevents recovery under an insurance policy where there was a material misrepresentation on an insurance application. It allows the insurer to rescind a policy or deny coverage if the insured made a misstatement on the application that was either (1) fraudulent, (2) material to risk, or (3) affected the insurer's good faith decision to issue the policy. *In re HealthSouth Corp.,* 308 F. Supp. 2d 1253 (N.D. Ala. 2004). As a general rule, the provisions of § 12-14-7 become part of insurance policies issued in Alabama. *See Thomas v. Liberty Nat.*

10

*Life Ins. Co.*, 368 So.2d 254, 258 (Ala. 1979) ("This Court has a long history of cases holding that, where a statute governs the rights, obligations, and duties of an insurer or insured, that statute is read into and becomes a part of the insurance contract.").

Importantly, Alabama courts have held "it is not necessary that the insured have made the misrepresentation with an intent to deceive; even if innocently made, an incorrect statement that is material to the risk assumed by the insurer or that would have caused the insurer in good faith not to issue the policy in the manner that it did provides a basis for the insurer to avoid the policy." *Alfa Life Ins. Corp. v. Lewis*, 910 So. 2d 757, 762 (Ala. 2005) (affirming grant of summary judgment for rescission of life insurance policy based on incorrect response on application regarding existence of congestive heart failure condition even though the insured was not aware she had been diagnosed with congestive heart failure at the time); *see also Stephens v. Guardian Life Ins. Co. of Am.*, 742 F.2d 1329, 1333 (11th Cir. 1984) ("[T]he most innocent misrepresentation will afford a reason to rescind if the truth is either material to the risk or, even if immaterial, would have caused the particular insurer acting in good faith to have declined the coverage in the amount and at the rate obtained by the application.").

The application signed by Holt provides the following "Applicant's Statement" directly above Holt's signature:

11

> I affirm that the information provided is true, and to the best of my knowledge that no material information has been withheld. I also confirm that the Coverages and Limits described above are the Coverages and Limits I desire.

Ex. B.

Holt concedes he signed the application. Ex. A at p. 66:6-9. While he may contend he relied on the agent to accurately submit his information to American Modern, he is bound by the statements in the application because he had the ability to read it and correct any errors prior to signing it. *See Nationwide Mut. Fire Ins. Co. v. Pabon,* 903 So. 2d 759, 768 (Ala. 2004) ("Because [the wife] was given the opportunity to review the answers on the insurance application before she signed it, we reject the arguments that [the insurer's] agent created the inaccuracies on the application and that [the insurer] waived its right to defend on the basis that the application contained innocent but material misrepresentations. We conclude that [the wife] is bound by the answers on the insurance application.").

By signing the application, Holt represented to American Modern that he purchased the property in November 2020, paid $89,000 for it, and it was never uninsured during his ownership. Ex. B. These representations were made despite the fact Holt knew he purchased the subject property in 2017; he knew he paid $8,000 for it; and Holt knew the property was uninsured for more than three years before he applied for the American Modern policy. *See* Ex. E at pp. 36-13-37:21

and Ex. F. There is no way to interpret that other than Holt made intentional misrepresentations to American Modern in order to obtain the maximum insurance coverage limits for reduced premium.

American Modern properly rescinded the policy and denied the claim because Holt's misrepresentations were material to the risk of loss. "To invoke § 27-14-7, an insurer need only establish that a misrepresentation in the application was a material contributing influence that induced the insurer to issue the policy." *Alfa Life Ins. Corp. v. Lewis*, 910 So. 2d 757, 762 (Ala. 2005). "That the insurer could make its own investigation does not lessen its right to rely on the representations in the application." *Pabon*, 903 So. 2d at 767. In *Pabon,* the Court held "misrepresentations whether made intentionally or innocently, increase the risk of loss as a matter of law and are therefore material to the issuance of the policy." *Id.* at 767.

"Where the insurer specifically inquires as to a fact, the insured is thereby on notice that the insurer considers it material." *Lewis,* 910 So. 2d at 762. Additionally, "[a] misstatement is material for purposes of Section 27-14-7 if it shows the insurer's liability to be less than if the fact had been accurately stated, and if a rational underwriter knowing the correct fact would have rejected the risk or accepted it only at a higher premium." *Lexington Ins. Co. v. Wolfe*, 2008 WL 5262774 (S.D. Ala. Dec. 16, 2008). American Modern inquired about the purchase

13

date of the subject property; Holt misrepresented that by over three years. American Modern inquired about the purchase price for the subject property; Holt misrepresented that by over $80,000. American Modern inquired about how long the subject property was uninsured; Holt misrepresented that by over three years.

Based on American Modern's underwriting guidelines, it would not have accepted Holt's application and issued the policy had it been advised of the true facts concerning period the subject property was uninsured. Ex. G at ¶ 9. Additionally, it would not have issued the same coverage for the same premium if it new the true facts concerning the purchase price. *Id.* at ¶ 11. Based upon Alabama law, as set forth above, these facts render the misrepresentations material. Therefore, American Modern properly rescinded the policy and denied the claim based on Holt's material misrepresentations.

The circumstances at issue here are substantially similar to those in *Pabon* where the Court found the insured was precluded from coverage for a fire loss due to misrepresentations in the application. In that case, Pabon applied for a homeowner's insurance policy at a local Nationwide agency. The agent asked her a series of questions and completed the application on a computer. The agent printed and submitted the application to Pabon for review and signature, which was done. Based upon the application, Nationwide issued a homeowner's insurance policy listing the insured as "Sandra P. Pabon or Barakat."

14

Four months later, a fire destroyed the insured premises and contents. During the investigation, Nationwide discovered a number of inaccuracies on the application, including that the property was deeded to the Pabon's husband, solely. Further, Pabon had no actual ownership interest in the property, her husband was involved in a bankruptcy and other litigation at the time of the application. Additionally, Pabon's husband had previously filed several insurance claims including a business-related fire loss. Following the fire loss, Pabon submitted a sworn statement in proof of loss totaling over $270,000.00 which included $186,000.00 in personal property. Nationwide sifted the fire scene which revealed a significantly different picture of the personal property destroyed as compared to the contents inventory. Nationwide moved for summary judgment based on the misrepresentation defense, but the trial court denied the motion. Following an adverse jury decision, Nationwide appealed the trial court's decision to send Pabon's breach of contract claim to decision by a jury.

On appeal, the Court explained that under Ala. Code § 27-14-7, "it is not necessary that the insured have made the misrepresentation with an intent to deceive; even if innocently made, an incorrect statement that was material to the acceptance of the risk assumed by the insurer or that would have caused the insurer in good faith not to issue the policy provides a basis for the insurer to avoid the policy." *Pabon,* at 766. To avoid coverage, the insurer must show only that a

15

misrepresentation was made that was a "material contributing influence that induced the insurer to issue the policy . . . That the insurer could make its own investigation does not lessen its right to rely on the representations in the application." *Id*. at 767. Whether a misrepresentation is material is generally a jury question under Alabama law. *Id.* However, some misrepresentations are held to increase the risk of loss as a matter of law making them material to the issuance of the contract. *Id.* Under Alabama law, "[a]bsent misrepresentations, fraud, or other deceit by the agent, a person able to read and write is bound by an insurance application signed by him or her, whether or not he or she reads it." *Id*. Based upon the testimony of an underwriter that a pending bankruptcy and the prior loss history made the husband ineligible for insurance, the Court held that "Pabon's answers were material as a matter of law to Nationwide's acceptance of this risk, and we conclude that had Nationwide received accurate answers on that application, it would not have issued the [policy]." *Id.* at 767-68. Thus, the Court held Nationwide was entitled to avoid the policy and no coverage extended to the insured. *Id.* at 768.

The facts here are not materially different and compel the same conclusion reached by the Court in *Pabon*. Holt signed an insurance application which contained inaccurate statements concerning his purchase of the subject property and prior insurance maintained on the property. American Modern issued the

16

Policy in reliance on the information contained in Holt's signed application, but it would not have issued the Policy had it known Holt purchased the home nearly three years prior to the application submission for substantially less than he represented in the application and never insured it prior to submitting the application. Accordingly, American Modern was entitled to rescind the Policy and deny the claim. As such, American Modern is entitled to judgment as a matter of law with respect to Holt's breach of contract claim.

## C.     Holt's Post-Loss Misrepresentations Also Preclude Coverage

In Alabama, post-loss misrepresentations are governed partially by statute and partially by common-law. Ala. Code § 27-14-28 states "[n]o misrepresentation in any proof of loss under any insurance policy shall defeat or void the policy unless such misrepresentation is made with actual intent to deceive as to a matter material to the insured's rights under the policy." "Where an insured materially misrepresents to an insurer the proof of his loss with an intent to deceive, the insurer need not honor, and pay pursuant to, the contract of insurance." *Ex parte State Farm Fire and Cas. Co.*, 523 So. 2d 119, 121 (Ala. 1988).

During the investigation of the claim, Holt represented he spent approximately $80,000 renovating the subject property prior to the fire. Ex. A at p. 44:5-10. The fact he never produced a single receipt or other document to support that representation proves its falsity. Additionally, Holt represented the subject

17

property was occupied by a tenant at the time of the fire. However, the Birmingham Fire Department determined the home was not occupied at that time. Ex. J at p. 8. That is supported by the fact that there were no active utility accounts for the subject property at the time of the fire, which is also strong evidence the property was unoccupied at that time. *See* Exs. K and L. Finally, Holt represented the fire was accidental, but that is contradicted by the Birmingham Fire Department's conclusion of an incendiary cause. Ex. J. at pp. 1-2. Given the totality of the evidence disproving Holt's post-loss statements (and the dearth of evidence supporting his claims), American Modern is entitled to judgment as a matter of law on Holt's breach of contract claim based on his post-loss misrepresentation.

**D.    Arson Is A Defense To Coverage**

In order to establish arson as a defense, defendant must prove that "(1) the fire was intentionally set; (2) [the insureds] had a motive for committing the alleged arson; and (3) [the insureds] either set the fire or had it set, which may be proved by unexplained surrounding circumstantial evidence implicating [the insureds]." *Shadwrick v. State Farm Fire & Casualty Co.*, 578 So. 2d 1075, 1077 (Ala. 1991).

As to the first element, the fire was incendiary in nature and had multiple points of origin. Ex. J at pp. 1-2. There is no evidence supporting any theory of the

18

cause of the fire but arson as demonstrated by the Birmingham Fire Department's conclusion.

As to the second element, Holt purchased the subject insurance policy a few weeks before the fire, and he inflated the value of the policy by misrepresenting the purchase price. Thus, he had a financial motive to set the fire.

In order to establish the third element, American Modern must show that Holt set the fire or had it set. This may be done by establishing there is unexplained surrounding circumstantial evidence implicating Holt. American Modern's burden of proof is not particularly heavy. Proof may consist of circumstantial evidence "if the inferences are not too remote and all circumstances, including the inferences, are of sufficient force to bring minds of ordinary intelligence to a persuasion of incendiarism by a fair preponderance of the evidence." *Great Southwest Fire Ins. Co. v. Stone*, 402 So. 2d 899, 900 (Ala. 1981). Proof beyond a reasonable doubt, or proof by direct evidence, is not required. *Fondren v. Allstate Ins. Co.*, 790 F.2d 1533, 1535 (11th Cir. 1986).

Here, there is no evidence that anyone was at home at the time of the fire. There is no evidence that anyone else entered the home during this time. Although Holt claims he was out of town at the time of the fire, his testimony on this subject was equivocal, evasive and inconsistent. *See* Ex. A at pp. 84:6-88:1. Consequently, there is ample evidence of unexplained circumstances implicating that this fire was

19

started by Holt or at his direction as well as motive evidence. Therefore, American Modern is entitled to judgment as a matter of law on Holt's breach of contract claim because arson is a complete defense.

## D.    No Evidence Of Bad Faith

An insurer is liable for its bad faith refusal to pay an insurance claim when there is no lawful basis for the refusal coupled with actual knowledge of that fact. *Davis v. Cotton States Mut. Ins. Co.,* 604 So. 2d 354, 359 (Ala. 1992). No lawful basis "means that the insurer lacks a legitimate or arguable reason for failing to pay the claim." *Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So. 2d 916, 924 (Ala. 1981). To establish a bad faith refusal claim under Alabama law, the plaintiff must prove the following:

> (a) an insurance contract between the parties and a breach thereof by the defendant;
>
> (b) an intentional refusal to pay the insured's claim;
>
> (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
>
> (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
>
> (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether

20

there is a legitimate or arguable reason to refuse to pay the claim.

*Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982). Thus, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim. *Id.*

To show a lack of a debatable reason, the insured must be entitled to a directed verdict on the breach of contract claim. *See Ins. Co. of North America v. Citizens Bank of Thomasville*, 491 So. 2d 880, 883 (Ala. 1986). Negligent interpretation of information is not "bad faith" as a matter of law: "an insurer is not liable in a bad faith action simply because it has exercised poor judgment or has been negligent." *Aplin v. American Sur. Ins. Co.*, 568 So. 2d 757, 760 (Ala. 1990). "[T]he insured must eliminate any arguable reason propounded by the insurer for refusing to pay the claim." *LeFevre v. Westberry*, 590 So. 2d 154, 159 (Ala. 1991).

Holt's bad faith claim fails here because he cannot prove the absence of an arguable or debatable basis for denying the claim. In fact, American Modern had multiple bases for denying coverage. It is undisputed there were inaccuracies in the policy application and the Policy would not have been issued in the absence of those misrepresentations. Additionally, Holt, at a minimum, arguably made misrepresentations in connection with submitting the claim to American Modern, which are highlighted above. All of these factors, separately or in combination, provided American Modern with an arguable or debatable reason to deny the

21

claim. Accordingly, American Modern is entitled to judgment as a matter of law on Holt's bad faith claim.

## IV. CONCLUSION

Holt's claims for breach of contract and bad faith are precluded because American Modern properly rescinded the Policy and denied his fire loss claim because it is undisputed that he made material misrepresentations in his insurance application. American Modern was entitled to rely on Holt's application in connection with the issuance of the Policy, but Holt's misrepresentations permit American Modern to rescind the Policy and deny coverage.

American Modern is also entitled to summary judgment because Holt's misstatements following the fire reveal a pattern of deception, which warrant denial of coverage. Further, there is sufficient evidence to support an arson defense based on the incendiary nature of the fire, Holt's opportunity to set the fire, and his clear financial motive to burn the grossly over-insured property.

Finally, American Modern is entitled to summary judgment as to Holt's bad faith claim because there is no credible evidence to support such claim and American Modern had a legitimate – or at least  arguable -- reason for its coverage decisions.

WHEREFORE, PREMISES CONSIDERED, Defendant American Modern Property and Casualty Insurance Company respectfully requests the Court enter

judgment in its favor and against Plaintiff Joseph Holt because there is no genuine

issue of material fact and it is entitled to judgment as a matter of law.

Respectfully submitted,

DATED:  July 8, 2022                    */s/ Brandon J. Clapp*
                                        F. Lane Finch, Jr. (ASB-0027-I58F)
                                        Brandon J. Clapp (ASB-3990-D82W)
                                        *Attorneys for Defendant*

**OF COUNSEL:**
**SWIFT, CURRIE, MCGHEE & HIERS, LLP**
2 North 20th Street, Suite 1405
Birmingham, AL 35203
T: (205) 314-2406
F: (205) 244-1373
lane.finch@swiftcurrie.com
brandon.clapp@swiftcurrie.com

23

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2022, the foregoing was served upon the following attorney(s) of record by one or more of the following means in accordance with the Federal Rules of Civil Procedure:

[✓]    CM/ECF Electronic Filing
[]    Email
[]    U.S. Mail
[]    Facsimile
[]    Hand Delivery

Richard A. Rice, Esquire
rrice@rice-lawfirm.com
***Attorney for Plaintiff***

                                        */s/ Brandon J. Clapp*
                                        OF COUNSEL


4857-6134-4551, v. 2

24