FILED

2023 Sep-27  PM 01:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOSEPH HOLT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.: 2:21-cv-00885-MHH** |
| | ) | |
| **AMERICAN MODERN HOME** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Less than a month after Joseph Holt insured a house he owned under a policy issued by American Modern Property & Casualty Insurance Company, the house was destroyed in a fire. American Modern rescinded Mr. Holt's policy and rejected his claim under the policy after American Modern discovered that responses to several questions on Mr. Holt's policy application were inaccurate. Mr. Holt contends that American Modern breached his contract of insurance and acted in bad faith when the company refused to pay his claim. American Modern has asked the Court to enter judgment in its favor on Mr. Holt's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.

This opinion opens with a statement of the legal standard that governs American Modern's summary judgment motion. Then, consistent with that

standard, the Court summarizes the evidence in the summary judgment record, presenting the evidence in the light most favorable to Mr. Holt, the non-moving party. Finally, the Court analyzes the evidence under the substantive law that governs Mr. Holt's claims and American Modern's defenses to coverage to determine whether there are disputed questions of fact that a jury must resolve.

## I.

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences from the evidence in the light most favorable to the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). "[A] litigant's self-serving statements based

on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018); *see also Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage."). Even if a district court doubts the veracity of certain evidence, the court cannot make credibility determinations; that is the work of jurors. *Feliciano*, 707 F.3d at 1252 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1162 (11th Cir. 2012) ("Where a fact-finder is required to weigh a deponent's credibility, summary judgment is simply improper.").

Because American Modern moved for summary judgment, the Court views the evidence in the light most favorable to Mr. Holt in this opinion.

## II.

On July 7, 2017, Mr. Holt bought a rental property located at 1228 4th Place North in Birmingham, Alabama for $8,000. (Doc. 16-1, pp. 8, 29; Doc. 16-6).[1] In November 2020, Mr. Holt called The Marcus Agency and spoke to a licensed insurance agent named Taylor Dye. Mr. Holt told Mr. Dye that he wanted to apply for insurance policies for three properties, including the rental property located at

---

[1] The deed for the house reflects a $1,000 downpayment and a $7,000 mortgage on the property. (Doc. 16-6, p. 2; *see also* Doc. 16-1, p. 9).

1228 4th Place North.  (Doc. 16-1, pp. 15–18).[2]  Mr. Dye completed the policy applications over the phone, and Mr. Holt signed what Mr. Dye "went over with [him]" over the phone "and told [him] to sign."  (Doc. 16-1, pp. 16, 29).  Mr. Holt "lean[ed] on [Mr. Dye] to walk [him] through the process," (Doc. 16-1, p. 43), and "relied on [Mr. Dye's] knowledge throughout the whole thing," (Doc. 16-1, p. 29).

The policy application bears American Modern's logo in the top, right-hand corner of each page.  (Doc. 16-2).  The application is labeled "Dwelling Basic Application" and concerns the policy period ranging from November 9, 2020 through November 9, 2021.  (Doc. 16-2, p. 1; *see also* Doc. 16-1, p. 17).  The application that appears in the record indicates that Mr. Holt bought the house on November 9, 2020, for $89,000, that the house had an estimated value of $100,000,

---

[2] Mr. Holt testified that he understood that Mr. Dye worked for State Farm, and he did not understand the relationship among State Farm, American Modern, and the Marcus Agency.  (Doc. 16-1, p. 35).

According to the policy application, the Marcus Agency is located in Birmingham, Alabama. (Doc. 16-2, p. 2).

and that the house had not been uninsured while Mr. Holt owned it.  (Doc. 16-2, pp. 2, 4).

Mr. Holt signed the application on November 13, 2020; Mr. Dye's signature is not dated.  (Doc. 16-2, p. 5; *see also* Doc. 16-1, p. 18).  Immediately above the signature lines, the application states:

> **APPLICANT'S STATEMENT**
> I affirm that the information provided is true, and to the best of my knowledge that no material information has been withheld. . . .

(Doc. 16-2, p. 5).  The page preceding the signature lines contains this language:

> **FRAUD WARNING**
> Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

(Doc. 16-2, p. 4).  American Modern issued a basic dwelling policy for Mr. Holt's property at 1228 4th Place North effective November 9, 2020.  (Doc. 16-3, p. 3). Mr. Holt did not read the policy when he received it.  (Doc. 16-1, p. 21).

On November 26, 2020, a fire destroyed the 1228 4th Place North property. (Doc. 16-1, p. 22).  At the time, the house was occupied by a tenant and his family. (Doc. 16-1, pp. 13, 15, 22).  Mr. Holt filed a claim for benefits under the American

Modern policy.  American Modern investigated the claim and classified the dwelling as an "obvious total fire loss."  (Doc. 16-4, p. 3).

American Modern's adjuster completed a "Long Report."  (Doc. 16-4).  In the report, she noted that the fire occurred within the first 30 days of coverage and wrote: "motive - as there is no mortgage, insured purchased home for $7,000 and insured for $100,000[.]  [T]here would be a financial gain."  (Doc. 16-4, p. 3).  According to the report, Mr. Holt told the adjustor that he did not have coverage on the house until he secured the November 9, 2020 American Modern policy.  (Doc. 16-4, p. 3).  The adjustor noted inconsistencies between information in the policy application and the information Mr. Holt provided following the fire.  (Doc. 16-4, pp. 3–4).

During American Modern's investigation of claim, Mr. Holt submitted to an examination under oath.  In the examination, Mr. Holt acknowledged several facts that contradicted answers on the insurance application:  that he bought the property in 2017 rather than 2020; that the purchase price was $8,000, not $89,000; and that he did not have insurance coverage on the property before he applied to American Modern for coverage.  (Doc. 16-5, pp. 2, 4, 11).  Mr. Holt stated that he sent Mr. Dye the deed for the property, he told Mr. Dye how much he had invested to renovate the house, and he estimated that the house was valued at $89,000 as of 2020.  (Doc. 16-5, pp. 9, 11).  The deed that Mr. Holt asserts he provided to Mr. Dye discloses a

$7,000 mortgage on the property, a total purchase price of $8,000, and a 2017 date of purchase.  (Doc. 16-6, p. 2).

Mr. Holt stated that before he signed the policy application, he did not recall seeing that it indicated that he paid $89,000 as the purchase price for the house and that, had he seen the incorrect figure, he would have notified Mr. Dye of the error. (Doc. 16-5, p. 9).  According to Mr. Holt, he told Mr. Dye that the property was not insured at the time of the application, but Mr. Dye assured him that would not be a problem and that an inspector would come to look at the property.  (Doc. 16-5, p. 14).

Following its investigation, American Modern denied Mr. Holt's insurance claim and rescinded his policy.  (Doc. 16-8; Doc. 16-9).  American Modern stated that "there never [was] any coverage available because the policy was voided from the beginning because untrue information was entered on the application."  (Doc. 16-8, p. 2).  American Modern cited three "misrepresentations on the [policy] application that were pertinent to the issuance of the policy" relating to the insured status of the house when Mr. Holt applied to American Modern for coverage:  the purchase date of the house, the purchase price of the house, and the presence of a mortgage on the house.  (Doc. 16-9, pp. 2–3).  American Modern asserted:  "since a policy was never in effect, there is no coverage available and no payment can be made for any claim submitted."  (Doc. 16-8, p. 2).

This lawsuit followed American Mortgage's denial of Mr. Holt's insurance claim.  (Doc. 1-2, pp. 3–11).

## III.

Breach of Contract Claim

Under Alabama law, a "contract of insurance, like other contracts, is governed by the general rules of contracts."  *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001).[3]  Relying on Alabama Code § 27-14-7, Modern American argues that the company properly rescinded Mr. Holt's policy and denied his claim under the policy because Mr. Holt "made intentional misrepresentations" on the policy application "to obtain the maximum insurance coverage limits for reduced premium," and Mr. Holt's "misrepresentations were material to the risk of loss."  (Doc. 15, p. 15).  Modern American points to incorrect information in the policy application concerning the date on which Mr. Holt bought the property, the

---

[3] In a diversity case like this one, a federal court must "apply the laws, including principles of conflict of laws, of the state in which the federal court sits."  *Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004) (citation omitted).

"In a contractual dispute, Alabama law . . . first look[s] to the contract to determine whether the parties have specified a particular sovereign's law to govern."  Absent "such a contractual specification," the court follows "the principle of *lex loci contractus*, applying the law of the state where the contract was formed."  "That state's law then governs unless it is contrary to the forum state's fundamental public policy."

*Morse v. Life Ins. Co. of North Am.*, 399 F. Supp. 3d 1236, 1241 (N.D. Ala. 2019) (alteration in original) (quoting *Stovall v. Universal Const. Co.*, 893 So. 2d 1090, 1102 (Ala. 2004)).  Mr. Holt's insurance policy does not contain a choice of law provision.  It appears that American Modern issued Mr. Holt's policy in Alabama, so the Court applies Alabama law in this opinion.

amount he paid for the property, and the assertion that the property had been insured since the date of purchase.  (Doc. 15, p. 14).

Section 27-14-7 permits an insurer to deny a claim for benefits under an insurance policy if the application for the policy contains misrepresentations or incorrect statements or omits or conceals facts, provided the misstatements or omitted facts are "[f]raudulent," or "[m]aterial [ ] to the acceptance of the risk" or "[t]he insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer...." Ala. Code. § 27-14-7(a)(1975).  Mr. Holt argues that he provided accurate information to Mr. Dye, the insurance agent who completed the application for the American Modern policy, and "§ 27-14-7 does not apply when there has been no concealment by the insured."  (Doc. 20, p. 9).  Mr. Holt posits:  "if an insurer's agent is responsible for incorrect information within an application, the insurance company cannot defend against an insurance claim on the basis of misrepresentation of that information."  (Doc. 20, p. 9).

Mr. Holt's argument finds support in Alabama law.  In *Coastal States Life Ins. v. Leonard*, the Alabama Supreme Court stated:

> We think it is clear that our cases hold that an insurance company cannot defend a suit on its policy on the grounds that there are

9

misrepresentations in the policy application, if the misrepresentations
are the fault of its own agent without participation by the insured or the
beneficiary, even where the application is a part of the policy.

182 So. 2d 913, 916 (Ala. 1966).  In *Graham v. Equitable Life Assur. Soc. Of the
U.S.*, the Alabama Supreme Court reversed an order granting the insurer's motion
for summary judgment on a claim for benefits under a life insurance policy where
there were genuine issues of material fact as to whether the insured or the agent who
completed the application for the policy "was responsible for misinformation on the
application[.]"  569 So. 2d 355, 356 (Ala. 1990).  The Alabama Supreme Court held
that if the agent was responsible, then the insurer could not deny coverage, but if the
insured was responsible, then the insurer could rescind the policy.  569 So. 2d at
356.  And in *Miller v. Dobbs Mobile Bay, Inc.*, the Alabama Supreme Court stated:

> It is well settled that an insurance company cannot defend its refusal to
> pay benefits on grounds that the insured made a misrepresentation in
> the application if the misrepresentation was the fault of the agent and
> that fault was without participation by the insured.  Moreover, Ala.
> Code 1975, § 27–14–7, does not apply where there has been no
> concealment by the insured.

661 So. 2d 203, 206 (Ala. 1995) (citations omitted).

In *Miller*, in reversing an order granting summary judgment for the insurer on
the breach of contract claim Ms. Miller brought regarding her deceased husband's
life insurance policy, the Alabama Supreme Court noted that when a salesperson
offered Mr. Miller credit life insurance as part of a finance transaction for a new car,
Mr. Miller initially declined the invitation and explained that he "had health

problems." 661 So. 2d at 205. The insurer's representative told Mr. Miller that he could not finance the car if he did not buy credit life insurance, that his health "would not be a problem," and that "the insurance would be effective notwithstanding the state of his health." 601 So. 2d at 205. As part of his application for credit life insurance, Mr. Miller signed a good health certificate. 601 So. 2d at 205. The Alabama Supreme Court found that the incorrect information in the health certificate did not trigger § 27-14-7; the facts of the case "[took] it out of the ordinary situation" because the evidence viewed in the light most favorable to Ms. Miller, who sued following Mr. Miller's death, indicated that Mr. Miller "did not conceal his poor health from anyone." 601 So. 2d at 206.

Relying on *Nationwide Mut. Fire Ins. Co. v. Pabon*, American Modern argues that even if Mr. Holt "relied on the agent to accurately submit his information to American Modern, he is bound by the statements in the application because he had the ability to read [the application] and correct any errors prior to signing it." (Doc. 15, p. 14) (citing 903 So. 2d 759 (Ala. 2004)). In *Pabon*, the Alabama Supreme Court stated: "Absent misrepresentations, fraud, or other deceit by the agent, a person able to read and write is bound by an insurance application signed by him or her, whether or not he or she reads it." 903 So. 2d at 767. In that case, the insured argued that the trial court properly submitted her breach of contract claim to a jury after the insurer denied her claim under her homeowner's insurance policy

because "her oral answers" to questions that the insurance agent asked "were accurate," but the agent "then incorrectly recorded the information on the application." 903 So. 2d at 767. The insured argued that "the answers on the application should not be imputed to her when, she alleges, the agent improperly recorded [her] responses and [she] merely failed to notice those incorrect answers before she signed the application." 903 So. 2d at 767. The Alabama Supreme Court disagreed, stating:

> Because Pabon was given the opportunity to review the answers on the insurance application before she signed it, we reject the arguments that Nationwide's agent created the inaccuracies on the application and that Nationwide waived its right to defend on the basis that the application contained innocent but material misrepresentations. We conclude that Pabon is bound by the answers on the insurance application.

903 So. 2d at 767.

This case falls somewhere between *Miller* and *Pabon*. Viewing the evidence in the light most favorable to Mr. Holt, this case is somewhat different from *Miller* because Mr. Dye did not tell Mr. Holt that he had to apply for homeowner's insurance for his rental property. Still, Mr. Dye no doubt welcomed the opportunity to insure multiple properties that Mr. Holt owned. (Doc. 16-2, p. 3) (indicating that Mr. Holt owned four dwellings, that he was eligible for multi-policy discount, and that he did not have an automobile policy through the Marcus Agency); (Doc. 16-1,

pp. 19, 29) (explaining that Mr. Dye completed applications for three policies at the same time).[4]

More importantly, the evidence viewed in the light most favorable to Mr. Holt indicates that the agent who completed the policy application was entirely responsible for the inaccurate information on the application and that the agent inserted the inaccurate information in the application after Mr. Holt signed it. According to Mr. Holt, Mr. Dye took information from him by telephone for the policy application, and he (Mr. Holt) provided accurate answers to Mr. Dye's questions and faxed a copy of the deed for the property to Mr. Dye. The property deed listed the purchase price for the house, the date of purchase, and the mortgage information for the property. (Doc. 16-1, p. 42); (Doc. 16-5, pp. 4, 9, 11); (Doc. 16-6, p. 2) (warranty deed). The attorney who questioned Mr. Holt in his 2020 examination under oath indicated that Mr. Holt did, in fact, fax the property deed to Mr. Dye. (Doc. 16-5, p. 4).

Mr. Holt testified that the policy application that Mr. Dye faxed him for his signature did not state that the house was purchased for $89,000. (Doc. 16-5, p. 9). Mr. Holt stated that had he seen a purchase price of $89,000 listed on the policy

---

[4] *See Miller*, 661 So. 2d at 206 (quoting *Ford Life Ins. Co. v. Jones*, 563 S.W.2d 399, 402 (Ark. 1978)) ("Obviously the agent is encouraged to sell insurance, which is Ford Life's business, and paid a handsome commission. Everyone is satisfied until the death of the insured when it may be learned that he was not 'in good health.'").

application that Mr. Dye faxed to him, he "would have called and said that's not right."  (Doc. 16-5, p. 9).  When asked in the examination under oath whether he understood that Mr. Dye used an $89,000 purchase price in the application so that he could insure the property for $100,000, Mr. Holt replied that he "was asking [Mr. Dye] what was the cheapest [premium] [he] could get" because his priority was a low premium, and he would have been happy with $50,000 in coverage.  (Doc. 16-5, pp. 11–12).  During that examination, the attorney conducting the examination stated that a company representative had spoken to Mr. Dye, and Mr. Dye explained that Mr. Holt did not tell him that he had bought the house for $89,000.  Mr. Dye stated:  "we were insuring for a hundred thousand because you know it's a refurbished, redone house."  (Doc. 16-5, p. 13).  The American Modern examiner then remarked to Mr. Holt that when she read Mr. Dye's statement, "it indicated to [her] that [Mr. Dye] kind of put down what he thought perhaps rather than what you told him."  (Doc. 16-5, pp. 13–14).  From this evidence, jurors could infer that Mr. Dye added the $89,000 purchase price to the application after Mr. Holt signed the application and returned it to the Marcus Agency, and Mr. Holt was not aware of the misinformation in the application.

Additionally, Mr. Dye indicated to the American Modern representative who interviewed him that Mr. Holt told him that the property was not insured.  (Doc. 16-5, p. 13).  According to Mr. Holt, Mr. Dye told him that the fact that the property

was not insured "[was] not a problem" because the property would be inspected. (Doc. 16-5, pp. 14–15; *see also* Doc. 16-1, p. 35). And Mr. Dye told Mr. Holt that the policy was effective immediately. (Doc. 16-5, p. 14).

From this evidence, jurors could find that Mr. Holt provided complete and accurate information to Mr. Dye, that the application that Mr. Dye sent Mr. Holt and that Mr. Holt signed was not inaccurate, and that Mr. Dye inserted inaccurate information in the application after Mr. Holt signed it. On this record, this case falls under the *Miller* line of cases that hold that "an insurance company cannot defend its refusal to pay benefits on grounds that the insured made a misrepresentation in the application if the misrepresentation was the fault of the agent and that fault was without participation by the insured." *Miller*, 661 So. 2d at 206. *Pabon* is not inconsistent on this point. *Pabon* rests on the proposition that an insured who has an opportunity to read an application that contains inaccurate information before the insured signs the application is bound by the information in the application for purposes of § 27-14-7, "[a]bsent misrepresentations, fraud, or other deceit by the agent." *Pabon*, 903 So. 2d at 767. If a jury believes the evidence favorable to Mr. Holt, then jurors could reasonably conclude that Mr. Dye prevented Mr. Holt from seeing the inaccurate information that Mr. Dye submitted to American Modern in

Mr. Holt's policy application such that § 27-14-7 will not provide American Modern a defense to coverage.[5]

Accordingly, the Court denies American Modern's motion for summary judgment on Mr. Holt's breach of contract claim based on American Modern's defense under Alabama Code § 27-14-7.

---

[5] What's more, under Alabama law, while § 27-14-7 enables an insurer to decline a claim based on "innocent but material misrepresentations," *Pabon*, 903 So. 2d at 767, an insurer "may contractually limit its right to rescind a policy to material misrepresentations that the insured intentionally made" by including in its application or in its policy language that conditions its ability to rescind on the insured's intent to deceive. *Standard Plan, Inc. v. Tucker*, 582 So. 2d 1024, 1030–31, 1031 n. 6 (Ala. 1991) (citing language in policy application providing that the insurer could "declare the policy null and void if any of the answers [on the policy application were] false and made with the intent to deceive") (emphasis omitted); *see also State Farm Fire & Cas. Co. v. Oliver*, 854 F.2d 416, 418–20 (11th Cir. 1988) (first citing *United Security Life Ins. Co. v. Wisener*, 113 So. 2d 530, 531 (Ala. App. 1959); and then citing *United Security Life Ins. Co. v. Harden*, 275 So. 2d 246, 247 (Ala. 1963)) (describing policy provision regarding intentional concealment and stating "we agree with the appellees that State Farm, by setting a standard for judging the Olivers' misrepresentations and concealments that requires intent, has waived its defenses of innocent misrepresentations under § 27-14-7(a)(2) and (3)").  Both the application for Mr. Holt's policy and the policy itself contain language that would appear to waive American Modern's ability to void the policy based on innocent misstatements.  (Doc. 16-2, pp. 4–5; Doc. 16-3, p. 12).  That may be why American Modern argues that Mr. Holt intentionally misrepresented information in his policy application.  (Doc. 15, p. 15).

*Denial Based on Misrepresentations During Claims Process*

Citing Alabama Code § 27-14-28, American Modern alternatively argues that it properly rescinded Mr. Holt's policy and denied his claim because Mr. Holt misrepresented information during the claims process.  Section 27-14-28 provides: "No misrepresentation in any proof of loss under any insurance policy shall defeat or void the policy unless such misrepresentation is made with actual intent to deceive as to a matter material to the insured's rights under the policy."  Ala. Code § 27-14-28 (1975).  This statute is "read into all insurance contracts subject to Alabama law" regardless of whether any related provisions appear in the policy itself, and, as its language plainly states, the statute requires an "intent to deceive." *Ex parte State Farm Fire & Cas. Co.*, 523 So. 2d 119, 120–21 (Ala. 1988).

American Modern points to three misrepresentations that it contends Mr. Holt made during the claims process:  Mr. Holt reported that spent approximately $80,000 renovating the property before the fire; the property was occupied by a tenant at the time of the fire; and the fire was accidental.  (Doc. 15, pp. 19–20).  Regarding the second and third statements, American Modern points to evidence indicating that the property had no active electric or water accounts at the time of the fire and to a report from the Birmingham Fire Department classifying the fire as "incendiary."  (Docs. 16-10, 16-11, 16-12).  Genuine issues of material fact regarding the veracity of each of these representations preclude summary judgment.

For Mr. Holt's alleged misstatement regarding the amount he spent renovating the house at issue, American Modern cites Mr. Holt's deposition. (Doc. 15, p. 19) (citing Doc. 16-1, p. 12). The deposition is not a "proof of loss" for purposes of § 27-14-28. Nevertheless, during the claims process, in his Examination Under Oath—his EOU—Mr. Holt stated that he had spent approximately $80,000 to renovate the property before the fire. (Doc. 16-5, p. 9). American Modern points to no evidence suggesting that Mr. Holt's statement was false—the company simply states in its brief, without an evidentiary citation, that Mr. Holt produced no receipts to support the claim and asserts Mr. Holt's failure to produce receipts "proves [the statement's] falsity." (Doc. 15, p. 19). In his EUO, Mr. Holt described the contractors who he hired to work on the property and discussed his record-keeping. (Doc. 16-5, pp. 4–5). Because a reasonable jury could credit Mr. Holt's testimony regardless of whether he produced receipts, *see Stein*, 881 F.3d at 857; *Feliciano*, 707 F.3d at 1253, and because American Modern has pointed to no evidence tending to suggest Mr. Holt did not invest in the property, American Modern has not met its initial burden to demonstrate the absence of a genuine issue of material fact regarding the truth or falsity of Mr. Holt's assertion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (moving party "always bears the initial responsibility" of pointing to evidence it believes demonstrates the absence of a genuine fact issue).

Sworn testimony regarding occupancy of the property and the accidental nature of the fire likewise precludes summary judgment. Mr. Holt submitted with his opposition brief the affidavit of Tedurius Pickett in which Mr. Pickett stated that he rented the property from Mr. Holt, was residing in it on or about the date of the fire, and that the fire occurred because a propane-fueled space heater he was using "burst into flames as [he] was sleeping." (Doc. 20-1, p. 3 ¶¶ 4, 7, p. 4, ¶ 10). Mr. Holt also touched on these issues in his EUO. (Doc. 16-5). Because credibility is an issue for the jury, Mr. Pickett's affidavit and Mr. Holt's testimony create a genuine issue of material fact regarding Mr. Holt's statements about occupancy and the cause of the fire that American Modern claims are misrepresentations justifying denial of the claim. *Feliciano*, 707 F.3d at 1253.

American Modern's related argument that it is not obligated under Mr. Holt's policy because the fire was an arson fares no better. Sworn testimony from both Mr. Holt (that he did not start the fire and does not know who did) and Mr. Pickett (that the fire occurred when his space heater burst into flames) contradicts American Modern's arson theory, creating a disputed fact issue that a jury must resolve. (*See* Doc. 16-1, p. 41; Doc. 20-1, p. 4, ¶ 10). Like the insurer in *Hillery v. Allstate Indem. Co.*, American Modern "conflates a *prima facie* showing of arson with an entitlement to summary judgment on that defense," when in reality, "a *prima facie* showing merely raises an inference that the insured committed arson, so as to enable

the insurer to present its arson defense at trial." 705 F. Supp. 2d 1343, 1361 (S.D. Ala. 2010). As in *Hillery*, the insured here, Mr. Holt, "expressly and unambiguously denied participating in, being involved in, or having any knowledge as to the origins of the fire," leaving "glaring and obvious fact questions as to whether the fire was started by an arson." 705 F. Supp. 2d at 1361.

<u>Bad Faith Claim</u>

Under Alabama law, to succeed on a claim of bad faith, a plaintiff must prove four elements:

(a) an insurance contract between the parties and a breach thereof by the defendant;

(b) an intentional refusal to pay the insured's claim;

(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); [and]

(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason.

*State Farm Fire and Cas. Co. v. Brechbill*, 144 So. 3d 248, 257 (Ala. 2013).[6] As the Alabama Supreme Court has explained: "In the ordinary case, in order for the plaintiff to recover on a bad faith claim, the plaintiff must show that if the contract claim had been tried on the date of the denial, the plaintiff would have been entitled to a directed verdict." *Ins. Co. of N. Am. v. Citizensbank of Thomasville*, 491 So. 2d 880, 883 (Ala. 1986). Alabama's stringent requirements for a bad faith claim require

---

[6] A conditional fifth element applies when the insured advances a theory of "intentional failure to determine the existence of a lawful basis," *Brechbill*, 144 So. 3d at 257. That element is not applicable here, as the Court discerns no such theory in Mr. Holt's complaint or summary judgment briefing.

Mr. Holt to show "the absence of any reasonably legitimate or arguable reason" for American Modern to deny the claim, such that if the breach-of-contract claim were tried on the date American Modern denied his claim, he would have been entitled to a directed verdict. *Brechbill*, 144 So. 3d at 257; *Citizensbank*, 491 So. 2d at 883.

Here, no reasonable jury could conclude that American Modern's proffered reason for denial—invocation of § 27-14-7 based on materially incorrect statements in Mr. Holt's application—was not a colorable justification for American Modern's denial of the claim. The Court has discussed extensively above the application of § 27-14-7 to the facts here and the existence of genuine issues of material fact as to whether the statute affords American Modern a basis for denying Mr. Holt's claim. Mr. Holt has not attempted to demonstrate that he would be entitled to judgment as a matter of law on his contract claim against American Modern.

## V.

Accordingly, the Court denies American Modern's motion for summary judgment on Mr. Holt's breach of contract claim and grants American Modern's motion for summary judgment on Mr. Holt's bad faith claim. By separate order, the Court will set this case for trial.

**DONE** and **ORDERED** this 27th day of September, 2023.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE